2014 UT App 96

**Dayle Chelane HANSEN, Petitioner
and Appellee,**

v.

**Thaine S. HANSEN, Respondent
and Appellant.**

No. 20130114–CA.

Court of Appeals of Utah.

April 24, 2014.

Catherine J. Hoskins, Clearfield, and Jill Cottle Garrett, Ogden, Attorneys for Appellant.

Timothy W. Blackburn and William A. Street, Ogden, for appellee.

Judge JAMES Z. DAVIS authored this Opinion, in which Judges J. FREDERIC VOROS JR. and JOHN A. PEARCE concurred.

## Opinion

DAVIS, Judge:

¶ 1 Thaine S. Hansen (Husband) appeals the trial court's ruling on his petition to modify his divorce decree, which ordered him to pay Dayle Chelane Hansen (Wife) alimony in the amount of $872 per month. We remand for clarification of the trial court's order with respect to the retroactivity of the alimony award, but in all other respects, we affirm the trial court's judgment.

## BACKGROUND

¶ 2 Wife filed for divorce in May 2009. A two-day trial was held in July 2010. After hearing the evidence, the trial court found that Wife had reasonable monthly expenses of $4,063 and that Husband had reasonable monthly expenses of $2,140. The court found that Wife "is skillful in a variety of areas and capable of working a full-time minimum wage job" and determined that she was capable of earning a net income of $1,005 per month. After making findings regarding Husband's historical earning capacity, the trial court found that Husband was capable of netting $2,162 per month. The trial court calculated both parties' net incomes by applying a 20% tax rate. Additionally, the trial court recognized that each party would net $1,452 per month from Husband's civil service retirement income, which the parties had stipulated should be divided equally between them. Based on these calculations, the trial court determined that Wife had an unmet monthly need of $1,605, while Husband had a monthly surplus of $1,522. Based on Wife's unmet need and Husband's ability to pay, the trial court ordered Husband to pay alimony to Wife in the amount of $1,000 per month. After taking into account the fact that alimony would be taxable to Wife and tax deductible to Husband—leaving Wife with only $800 per month in net alimony—the trial court pointed out that this award would still leave Wife with a monthly shortfall of $811[1] and Husband with a monthly surplus of $722.[2] The parties' divorce decree was entered on February 11, 2011, and is not the subject of this appeal.

¶ 3 On April 4, 2011, Husband filed a Petition to Modify the Decree, asserting that "he is unable to work due to a medical condition that involves both his back and feet." On June 17, 2012, Husband was administratively determined to be disabled as of March 21, 2011, and awarded Social Security Disability Income (SSDI) in the amount of $488 per month. Following a trial on the Petition to Modify, the trial court found Wife's monthly expenses to be $4,064, approximately the same as they had been at the time of the divorce. It again imputed minimum-wage income to her in the gross amount of $1,257

---

1. The careful reader may observe that some of these calculations contain slight errors. However, because any such errors do not affect our analysis, we use the numbers contained in the trial court's orders.

2. Initially, the trial court explained that its alimony award was intended to equalize the parties' incomes. However, in calculating the award, the trial court neglected to take into account the income that it had imputed to Wife. As a result, Wife's total monthly income—including retirement income, imputed income, and alimony—was greater than Husband's. When this error was pointed out, the trial court issued a clarification order in which it declined to alter the alimony award in spite of the erroneous calculation, explaining that even though the dollar amount of Wife's income was ultimately greater, she still had a significant monthly shortfall, whereas Husband had a surplus even after paying alimony.

per month. It also recognized that she was receiving gross income of $1,939 per month from Husband's civil service retirement and $366 per month from his military retirement. The trial court this time applied a 25% tax rate and calculated Wife's net monthly income to be $2,671, which left her with a shortfall of $1,393 per month. The trial court found that Husband's monthly expenses had changed and found that his reasonable monthly expenses amounted to only $1,867. The trial court did not impute income to Husband but determined that, based on a 25% tax rate, he was receiving $1,729 per month in net retirement income and $488 per month in non-taxable SSDI for a total of $2,217 per month, leaving him with a surplus of $350 per month.

¶ 4 Because Wife's needs had not changed but Husband no longer had the ability to pay alimony at the previous rate, the trial court determined that it would be appropriate to equalize the parties' standards of living by awarding alimony in an amount that would result in each party having an equal monthly shortfall. Accordingly, the trial court reduced the original $1,000 alimony award and ordered Husband to pay Wife $872 per month in alimony, which would leave each party with a monthly shortfall of $521. The trial court indicated that its decision was influenced by the fact that the parties had been married for forty-one years, that Husband had remarried and now received financial assistance from his new wife, and that Husband had contravened court orders regarding his life insurance policy to the likely financial detriment of Wife.[3] The trial court ordered that the modified award would be retroactive to the date when Husband was "administratively determined to be disabled." The court found that prior to the administrative determination, Husband "was able to work, albeit with limitations." However, the trial court acknowledged that Husband was on "temporary total disability for the period of time of his surgeries and reasonable recuperation" and had therefore "been unable continuously to work and generate an income." The court found that the "rehabilitation period for all surgeries and recuperation" was four and a half months and accordingly deducted an additional $4,500 from the amount Husband owed Wife in back alimony, effectively excusing Husband from making any alimony payments during those four and a half months. Husband appeals the trial court's modified alimony award.

## ISSUES AND STANDARD OF REVIEW

■■■ ¶ 5 First, Husband asserts that the trial court failed to adequately consider his ability to pay, Wife's reasonable needs, or Wife's ability to meet her own needs. Second, he challenges the trial court's use of a 25% tax rate and its method of equalizing the parties' monthly shortfalls in its order on the Petition to Modify because the trial court took a different approach when it originally fashioned an alimony award in the divorce decree. Third, he alleges that the trial court erred by including his SSDI in its calculation of his monthly income. Fourth, he argues that he should not be required to pay alimony out of his retirement benefits where Wife was already awarded half of those benefits. Finally, Husband asserts that the trial court's findings were not sufficiently clear regarding retroactivity of the modified alimony award.

Trial courts have broad latitude in determining whether to award alimony and in setting the amount. We review a trial court's award of alimony for an abuse of discretion and will not disturb a trial court's ruling on alimony as long as the court exercises its discretion within the bounds and under the standards we have set and has supported its decision with adequate findings and conclusions.

---

**3.** The trial court had previously ordered Husband to transfer ownership of a life insurance policy to Wife, who would then be responsible to pay the premium on the policy. After signing the necessary paperwork to transfer the policy, Husband cancelled the policy. The trial court considered Husband's behavior "underhanded to say the least" and expressed doubt regarding the likelihood of Husband's compliance with the court's order that he either reinstate the policy or obtain a comparable policy.

*Dobson v. Dobson,* 2012 UT App 373, ¶ 7, 294 P.3d 591 (citation and internal quotation marks omitted).

## ANALYSIS

### I. The Trial Court Properly Considered the Statutory Alimony Factors.

¶ 6 "In fashioning an alimony award, the trial court is required to consider the payor spouse's ability to pay and the recipient spouse's need and ability to produce income." *Fish v. Fish,* 2010 UT App 292, ¶ 12, 242 P.3d 787 (citing Utah Code Ann. § 30-3-5(8)(a)(i)–(iii) (Supp.2010) (current version at *id.* (LexisNexis 2013))). "Furthermore, the award should advance, as much as possible, the purposes of alimony by assisting the parties in achieving the same standard of living they enjoyed during the marriage, equalizing the parties' respective standards of living, and preventing either spouse from becoming a public charge." *Id.*

¶ 7 Husband asserts that the trial court failed to adequately consider his ability to pay, Wife's need, and Wife's ability to earn. He first argues that the trial court exceeded its discretion by ordering him to pay alimony in the amount of $872 per month after finding that he had the ability to pay only $350 per month. In support of this argument, he relies on *McPherson v. McPherson,* 2011 UT App 382, 265 P.3d 839, in which this court held that a trial court had exceeded its discretion by calculating "an alimony amount designed to cover [the wife's] needs" despite the fact that the husband did not have the ability to pay that amount. *Id.* ¶ 15. The case at hand is distinguishable from *McPherson* because the trial court did not order Husband to pay "an alimony amount de-signed to cover Wife's needs." *See id.* Rather, the trial court equalized the parties' incomes so that each suffered an equal monthly shortfall. We have consistently held that equalization of income—also termed "equalization of poverty"—is appropriate in "situations in which one party does not earn enough to cover his or her demonstrated needs and the other party does not have the ability to pay enough to cover those needs." *Sellers v. Sellers,* 2010 UT App 393, ¶ 3, 246 P.3d 173; *see also Fish,* 2010 UT App 292, ¶ 30, 242 P.3d 787 ("If there is not enough combined income available for both spouses to remain at the standard of living enjoyed during the marriage, their incomes should be equalized to the extent possible."); *Child v. Child,* 2008 UT App 338, ¶ 7, 194 P.3d 205 (discerning no error in the trial court's alimony award of $2,575 to the wife, which would leave the husband with $2,575 to meet his needs of $3,945 and the wife $5,214 to meet her needs of $7,217), *vacated in part on other grounds,* 2009 UT 17, 206 P.3d 633 (per curiam). Indeed, even in *McPherson,* this court acknowledged that on remand the trial court would have "discretion to make whatever other adjustments it deem[ed] necessary to achieve an equalization of the parties' standards of living or to explain its rationale for assigning a disproportionate percentage of the shortfall to one party." *McPherson,* 2011 UT App 382, ¶ 16, 265 P.3d 839.

¶ 8 This case presents precisely the situation where we have deemed equalization of income to be appropriate. Wife has an unmet monthly need of $1,393 and Husband lacks the ability to fulfill that need because he has a monthly surplus of only $350. Thus, it was entirely appropriate for the trial court to equalize the parties' monthly shortfalls,[4]

---

4. Throughout his brief, Husband reiterates the idea that the alimony award requires him to work in perpetuity in order to pay alimony to Wife. However, the trial court did not impute any earned income to Husband but calculated his income based solely on his retirement and disability benefits. On the other hand, the trial court did impute income to Wife, assuming that she was capable of working a minimum wage job in spite of her advancing age. After calculating these incomes and comparing them to the parties' needs, Wife still had a $1,393 per month shortfall, while Husband had a $350 per month surplus. The trial court's decision to equalize the parties' shortfalls does not sentence Husband to a life of involuntary servitude, as he suggests. Husband is in the same boat as Wife—they will both have to cut back their monthly expenses by $521 or find a way to make up the difference (in fact, considering that alimony is taxable to Wife and tax-deductible to Husband, and employing the same 25% tax rate as the trial court, Husband will actually have to cut back $391 per month, while Wife will have to cut back $651). And if Wife continues to choose not to work, she will have to cut back an additional $943 per month because the trial court imputed income to her, while Husband will suffer no additional pen-

particularly in light of the trial court's additional findings regarding the length of the marriage, Husband's new wife's financial situation, and Husband's actions with respect to the life insurance policy. *See* Utah Code Ann. § 30–3–5(8)(a)(iv), (c)(iv), (h)(iii)(A) (recognizing the length of the marriage, actions taken by one spouse to substantially undermine the financial stability of the other party, and a subsequent spouse's financial ability to share living expenses as appropriate considerations relating to an alimony award).

¶ 9 Husband further asserts that the trial court failed to consider Wife's ability to meet her own needs in calculating the alimony award. This assertion is simply not accurate. The trial court did consider Wife's ability to work and in fact imputed income to her. Husband's argument rests primarily on the fact that Wife has not actually been working, but regardless of whether Wife is working, she is deemed to be making the minimum wage she would earn at a full-time job. By imputing income to her, the trial court required her to meet that portion of her needs on her own. Imputing income does exactly what Husband claims the court did not do: it holds Wife accountable for meeting her own needs to the extent she is capable. Even if Wife were working a full-time minimum-wage job, it would not alter either her needs or income as found by the trial court. The only difference would be that she would actually be earning the money the imputation assumes she is earning.

¶ 10 Husband also argues that the needs Wife claims were based on an inflated standard of living the parties had enjoyed only after Husband's retirement, as a result of his working two part-time jobs while collecting retirement benefits.[5] Accordingly, Husband

argues that the trial court erred by setting Wife's monthly needs at $4,064. While it is surprising that Wife should have monthly needs that are more than double that of Husband's, Husband has not challenged the trial court's factual findings regarding Wife's needs.[6] We therefore decline to disturb those findings or the trial court's ultimate calculation of Wife's needs.

II. It Was Within the Trial Court's Discretion To Employ the 25% Tax Rate and To Equalize the Parties' Monthly Shortfalls in Calculating Alimony for Purposes of the Modification.

¶ 11 Husband next asserts that the trial court erred by applying a 25% tax rate to the parties' incomes rather than the 20% tax rate it applied in the divorce decree. Husband argues that this approach "is not fair because [Wife] now has a greater deficit [than] what she had at the entry of the Decree of Divorce." However, Husband has failed to articulate any reason why the trial court should have been obligated to employ the same tax rate it used in the divorce decree when calculating the parties' incomes for purposes of the modification. Given that the trial court applied the higher tax rate to both Wife's and Husband's incomes, we fail to see how the result was inequitable.

■ ¶ 12 Husband's argument regarding the method the trial court used to calculate alimony is similarly unpersuasive. Although the trial court first purported to equalize the parties' monthly incomes in the divorce decree and then relied on the parties' relative shortfalls and surpluses in its clarification order, *see supra* note 2, both of these analyses, which seemed to address equalization principles, were ultimately irrelevant. Be-

alty for his inability to work because the trial court did not impute income to him. Additionally, Husband has the support of a new spouse sharing his living expenses. In short, Husband has not been left quite so destitute as he would have us believe.

5. Husband suggests that the trial court should have considered the fact that Wife has cut back on her standard of living since the divorce because she has gone "for long periods of time" without the alimony she was awarded—apparently because Husband stopped paying alimony

after his surgeries—and because she has not actually been earning the wage that was imputed to her. We recently rejected a similar argument in *Kidd v. Kidd*, 2014 UT App 26, 321 P.3d 200, holding that it was appropriate for the trial court to base its assessment of the recipient party's need on her projected needs, despite the fact that she had cut back on expenses since the parties' separation due to lack of income. *Id.* ¶¶ 22–24.

6. Husband did not challenge those findings in the context of the original divorce decree either.

cause the alimony award in the original decree did not exceed Husband's ability to pay, the traditional needs analysis was sufficient,[7] and based on that analysis, the trial court could have awarded alimony up to the maximum of Husband's ability to pay so long as that amount did not exceed Wife's need[8] *See Sellers v. Sellers*, 2010 UT App 393, ¶ 3, 246 P.3d 173 ("[C]ourts will equalize the incomes of the parties only in those situations in which one party does not earn enough to cover his or her demonstrated needs and the other party does not have the ability to pay enough to cover those needs."); *see also Jensen v. Jensen*, 2008 UT App 392, ¶ 13, 197 P.3d 117 (explaining that "the [recipient] spouse's demonstrated need must . . . constitute the maximum permissible alimony award" and that unless the circumstances are such as to make equalization appropriate, "attempting to equalize the parties' income[,] rather than going through the traditional needs analysis, is an abuse of discretion" (alterations and omission in original) (citations and internal quotation marks omitted)).

¶ 13 The analysis undertaken by the court in modifying alimony was necessarily different. Because the parties' combined income was insufficient to meet their combined needs, an equalization analysis was appropriate. The trial court calculated alimony in such a way as to equalize the parties' monthly shortfalls. This approach is consistent with calculations we have approved in other cases. *See, e.g., McPherson v. McPherson*, 2011 UT App 382, ¶ 16, 265 P.3d 839 (recognizing "the trial court's discretion to make whatever . . . adjustments it deems necessary to achieve an equalization of the parties' standards of living" and advising the trial court to justify any decision to assign "a disproportionate percentage of the shortfall to one party"); *Boyer v. Boyer*, 2011 UT App 141, ¶¶ 4, 17 n. 5, 20, 259 P.3d 1063 (approving the trial court's equalization of the par-

ties' monthly shortfalls for purposes of awarding rehabilitative alimony). Thus, the trial court did not abuse its discretion by equalizing the parties' shortfalls in calculating alimony for the purposes of the modification.

### III. The Trial Court Was Correct To Include Husband's SSDI in Calculating Husband's Monthly Income.

■■■ ¶ 14 Husband argues that the trial court erred by considering his SSDI as part of his total income for purposes of calculating alimony. In support of this contention, he relies on case law instructing trial courts not to classify social security benefits as marital property. *See Olsen v. Olsen*, 2007 UT App 296, ¶ 25, 169 P.3d 765. However, there is a difference between dividing social security benefits as marital property and considering them as a source of income for alimony purposes. When determining an alimony award, "it is appropriate and necessary for [trial courts] to consider all sources of income." *Wilde v. Wilde*, 2001 UT App 318, ¶ 27, 35 P.3d 341 (alteration in original) (citation and internal quotation marks omitted) (rejecting a recipient spouse's argument that the trial court should not have considered her disability benefits in calculating her ability to meet her own needs); *cf. Bolliger v. Bolliger*, 2000 UT App 47, ¶¶ 20, 29, 997 P.2d 903 (holding that the recipient spouse's receipt of social security benefits could constitute a material change of circumstances permitting modification of an alimony award). Thus, the trial court was correct to include Husband's SSDI in its calculation of Husband's income.

### IV. The Fact that the Parties Were Living on Retirement Income at the Time of the Divorce Does Not Affect the Trial Court's Alimony Analysis.

■■ ¶ 15 Husband next argues that he should not be required to pay alimony out of

---

7. Even if the equalization had been appropriate in calculating alimony for purposes of the divorce decree, Husband has failed to explain why the trial court would necessarily have been bound to use the same method of equalization in the modification as it did in the decree, so long as both methods were appropriate.

8. Given that Wife's monthly shortfall was greater than Husband's ability to pay, an equalization analysis—and a greater alimony award to Wife

based on that analysis—would not necessarily have been inappropriate in the context of the original divorce decree. However, Wife never challenged the trial court's initial alimony award, and we express no opinion on the propriety of that award. Suffice it to say that the award as calculated did not require an equalization analysis because the award did not exceed Husband's ability to pay.

his retirement when Wife has already been awarded half of the retirement as part of the parties' property settlement. Although Husband acknowledges that we have previously considered and rejected this argument in *Jensen v. Jensen*, 2007 UT App 377, 173 P.3d 223, *see id.* ¶¶ 8–9, he nevertheless attempts to distinguish his case on the basis that he and Wife were already living on his retirement benefits at the time of the divorce, whereas the parties in *Jensen* were divorced before the parties began collecting retirement benefits, *see id.* ¶ 1. Husband has failed to provide any support for this distinction. Indeed, we do not see how a recipient spouse's ability to collect retirement benefits negates any needs he or she may have in excess of those benefits. The trial court in this case considered the retirement benefits in calculating Wife's income and even imputed income to her, yet it still determined that she had unmet need. Insofar as Husband was capable of meeting that need—or, in this case, sharing the shortfall—the trial court did not exceed its discretion in requiring him to do so.

## V. The Trial Court's Order Regarding the Retroactivity of the Alimony Award Is Ambiguous.

█ ¶ 16 The trial court ordered that the $872 monthly alimony award would be retroactive "to the date that [Husband] was administratively determined to be disabled." The Social Security Administration determined that Husband became disabled on March 21, 2011, but this determination was not made until June 17, 2012. Husband asserts that the court's order is ambiguous because it could be interpreted as referring to either date. We agree.

¶ 17 The trial court explained its decision not to make the award retroactive to an earlier date by pointing out that there was no evidence indicating that Husband "could not work prior to the time he was administratively determined to be disabled." This statement provides no clarity as to the trial court's intent. The fact that the trial court

contemplated the possibility of an earlier date suggests that it intended to order the alimony retroactive to June 17, 2012, since the trial court lacked the authority to make alimony retroactive to any date before approximately April 4, 2011, when the petition to modify was filed. *See* Utah Code Ann. § 78B–12–112(4) (LexisNexis 2012) (explaining that alimony may not be retroactively modified to a date prior to the time the petition to modify is served on the opposing party). On the other hand, because the Social Security Administration set Husband's disability date as March 21, 2011, the trial court's statement that the administrative determination provided the first evidence of disability tends to indicate an intent to make the alimony award retroactive to that date.[9] Because the trial court's order is ambiguous, we find it necessary to remand for the trial court to clarify the date to which the modified alimony award is retroactive.

¶ 18 Husband also argues that if the trial court intended the retroactive date to be June 17, 2012, then it exceeded its discretion by determining that he was capable of working and paying the original $1,000 monthly alimony award through that date. "[T]rial courts have broad discretion" in determining whether to make an award retroactive "for any or all of [the] period" between the time the petition to modify is filed and the time the modification order is entered. *McPherson v. McPherson*, 2011 UT App 382, ¶¶ 17–18, 265 P.3d 839. Nevertheless, the trial court's factual findings must support its determination. *Cf. id.* ¶¶ 19–23 (reversing the trial court's order refusing to modify a temporary alimony award retroactively after the court found that the payor spouse was not voluntarily underemployed where the only justification for the amount of the award was the payor spouse's purported underemployment). Should the trial court determine that June 17, 2012, is the appropriate retroactive date, its reasoning in determining that Husband had the ability to pay alimony at the rate of $1,000 per month between the time

---

9. We acknowledge that if this interpretation reflects the trial court's actual reasoning, it reveals an error in the trial court's understanding of how far back retroactive alimony could be ordered.

Regardless of the trial court's intent, retroactive alimony could not be awarded for any period prior to April 4, 2011. *See* Utah Code Ann. § 78B–12–112(4) (LexisNexis 2012).

the petition to modify was filed and June 17, 2012, should be explained in light of the Social Security Administration's determination that Husband was disabled as of March 21, 2011.[10]

## CONCLUSION

¶ 19 The trial court appropriately considered the statutory alimony factors of need, ability to pay, and ability to earn in conducting its alimony analysis. Further, it was within the trial court's discretion to equalize the parties' monthly shortfalls where their combined income was insufficient to meet their combined needs. The trial court was not required to use the same tax rate in the modification that it used for purposes of the divorce decree, and the equalization analysis it undertook in the modification was appropriate. Additionally, the trial court correctly considered Husband's SSDI in calculating alimony and was not precluded from awarding alimony based on Wife's receipt of her share of Husband's retirement income. However, we consider the trial court's retroactivity order to be ambiguous. Accordingly, we affirm the trial court's alimony award but remand for the trial court to clarify the date it intended for the modified award to become effective.

---

**10.** It is conceivable that the trial court's $4,500 credit to Husband, which was based on his inability to work while undergoing and recovering from surgery, was designed to compensate for the greater alimony payments between April 4, 2011, and June 17, 2012. Indeed, reducing alimony to $872 per month during that approximately fifteen-and-a-half-month time period would have saved Husband a total of $1,984 (($1,000 – $872) × 15.5), significantly less than the $4,500 credit, which completely excused Husband from making his $1,000 monthly alimony payment for four and a half months due to his surgeries. On the other hand, it is also conceivable that the trial court intended to grant Husband the $4,500 credit in addition to making the alimony retroactive to April 4, 2011. This should be clarified on remand.