**2015 UT App 308**

## THE UTAH COURT OF APPEALS

MELINDA EARHART,
Appellant,

*v.*

TIM EARHART,
Appellee.

Opinion
No. 20140827-CA
Filed December 31, 2015

Third District Court, Salt Lake Department
The Honorable Su J. Chon
No. 104905767

Brian E. Arnold and Lauren Schultz, Attorneys
for Appellant

Andrew W. Gilliland, Attorney for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES GREGORY K. ORME and J. FREDERIC VOROS JR.
concurred.

CHRISTIANSEN, Judge:

¶1      Melinda Earhart appeals from the district court's decision
to modify a divorce decree, arguing that the district court abused
its discretion in determining that her former husband's income
had substantially changed, that the change was unforeseeable,
and that the new level of income was likely to continue for the
foreseeable future. We affirm.

BACKGROUND

¶2    Melinda Earhart and Tim Earhart married in May 2006 and divorced in September 2011.[1] Tim adopted Melinda's daughter, and the Earharts had three children together. During the marriage, Tim was an owner and chief executive officer of a business. In the divorce decree, the parties stipulated that Tim's monthly income was $22,000, or $264,000 per year. The decree required Tim to pay $4,000 in monthly alimony for five years, $3,200 in monthly child support until the children turned eighteen or graduated from high school, $3,935.41 per month for the mortgages encumbering Melinda's residence until it was sold,[2] and $1,528.01 per month for Melinda's vehicle lease. Tim was further required to pay for insurance and maintenance for the vehicle, and to pay for a fixed period of the lease for a replacement vehicle equivalent to a Lexus LX570 once the existing lease expired. He was also required to pay for private school and college tuition for the four children. His financial obligations under the divorce decree amounted to approximately $15,000 per month.[3]

¶3    In August 2012, Melinda filed a motion seeking an order for Tim to show cause for not fully paying his financial obligations. Tim then filed a petition to modify the divorce decree from which the obligations flowed. At the hearing, Tim testified that approximately one month after entry of the decree,

---

1. Because the parties still share a last name, we refer to them by their first names for clarity, with no disrespect intended by the apparent informality.

2. The parties agreed not to sell the house "until the housing market recovers." Melinda was awarded possession of the house but each party was awarded a 50% equity interest in it.

3. Melinda was also awarded 25% of the gross profit of Tim's business, and the business was required to pay all of her tax liability each year.

his business had suffered the unforeseen loss of its primary client. As a result, Tim had changed his employment focus from client-billable work to attracting new clients as a "rainmaker". He also testified that shortly after losing the major client, his lender (his father) had converted the outstanding loans to shares in the business to become a 40% owner of the business. Because time spent seeking new clients could not be billed to a client, and because the business had to hire employees or retain independent consultants to complete work for existing clients, Tim and his father (as the new shareholder) agreed to cap Tim's annual income at $180,000, down from the $264,000 he had previously earned. Tim testified to this reduction as follows:

> Q    So according to your billable rate right now, if you weren't doing what you're doing, could you make $22,000 a month?
>
> A    If I was a billable resource?
>
> Q    Yes.
>
> A    Yes.
>
> Q    All right. So then are you voluntarily under-employed?
>
> A    I am not voluntarily under-employed.
>
> Q    Are you voluntarily not making as much money as you really could?
>
> A    No. I am not. As we explained yesterday, we changed the way the company operates and we had to do that because of the volatility of the industry and the way we had proven with two previous clients, we couldn't sustain the business.
>
> Q    Okay. According to your billable rate, you could make $22,000 a month?
>
> A    Yes. I could. And I could also be in the same situation I was in where I could be thrown out [by] a client and not have any billable rate.

¶4    The district court found credible Tim's testimony regarding the change in his rate of pay and the evidence he presented in support of it. The court further found that the change in income was not contemplated at the time of the divorce decree and that it was likely to continue for the foreseeable future. Accordingly, the district court reduced Tim's monthly alimony obligation from $4,000 to $3,000, reduced his monthly child support obligation from $3,200 to $2,348, and eliminated the requirement that he pay a vehicle lease for Melinda. Melinda appeals from that modification.

ISSUES AND STANDARDS OF REVIEW

¶5    Melinda first challenges the district court's finding that Tim's monthly income had fallen from $22,000 to $15,000 despite his testimony that his billable rate had not changed. In her view, his income potential had not actually changed, and the district court therefore lacked the power to modify the amount of alimony and child support specified by the divorce decree. A district court's determination regarding whether a substantial change of circumstances has occurred is presumptively valid, and our review is therefore limited to considering whether the district court abused its discretion. *Young v. Young*, 2009 UT App 3, ¶ 4, 201 P.3d 301.

¶6    Melinda next contends that the district court inappropriately based the modified alimony award on her needs at the time of the modification rather than her needs at the time of the decree of divorce. To the extent that this contention presents a legal question, an appellate court generally reviews properly preserved questions of law for correctness. *See Davis v. Davis*, 2011 UT App 311, ¶¶ 6–7, 263 P.3d 520; Utah R. App. P. 24(a)(5) (requiring an appellant's brief to either provide a citation to the record showing that an issue was preserved or to articulate grounds for reviewing an unpreserved issue).

¶7 Melinda also asserts that the district court lacked the power to remove the vehicle lease obligation contained in the original decree. She argues the district court incorrectly characterized that obligation as part of alimony rather than as a property settlement. We review the district court's decision to modify the decree for an abuse of discretion. *See Young*, 2009 UT App 3, ¶ 4; *see also Burt v. Burt*, 799 P.3d 1166, 1170 (Utah Ct. App. 1990); *Tsoufakis v. Tsoufakis*, 382 P.2d 412, 413 (Utah 1963).

## ANALYSIS

### I. Change of Circumstances

¶8 Melinda first contends that the district court abused its discretion by determining that a substantial change of circumstances had occurred. Specifically, she asserts that because Tim admitted that his billable rate had not changed, his loss of income was attributable to voluntary underemployment rather than to a true change of circumstances. Melinda concludes that the district court's findings were inadequate to support its implicit determination that Tim's income had changed due to circumstances outside his control: "Therefore, the court's findings were not sufficient to support its finding."

¶9 Utah courts have long recognized that "voluntary impoverishment is not a ground for reduction of alimony." *Callister v. Callister*, 261 P.2d 944, 949 (Utah 1953); *see also, e.g.*, *Rayner v. Rayner*, 2013 UT App 269, ¶¶ 7–8, 316 P.3d 455; *Hall v. Hall*, 858 P.2d 1018, 1024–26 (Utah Ct. App. 1993). However, here, the district court did not find that Tim had voluntarily begun to earn less than he was capable of earning. Nor did Tim admit, as Melinda asserts, to "$22,000.00 a month in gross income."

¶10 Under cross-examination, Tim was asked, "According to your billable rate, you could make $22,000 a month?" He replied, "Yes. I could. And I could also be in the same situation I was in where I could be thrown out [by] a client and not have any

billable rate." Melinda frames this as Tim's admission that he could be earning $22,000 per month. But such a framing takes Tim's statement out of context. Tim testified that his business lacked the clientele necessary to support that level of remuneration and that he had had to spend time attracting new clients. Thus, while his billable *rate* may not have changed, the actual number of hours he was able to bill at that rate fell.

¶11 The district court found that Tim's annual income had fallen from $264,000 to $180,000. While it is true that the district court did not *explicitly* state that the loss of income was involuntary, the court did find that Tim's testimony "was credible with respect to the change in his business model," that the change in clientele and income was unforeseeable, and that "his documentary evidence supported that his income is capped at $180,000.00."[4] We read this as a finding by the district court that Tim's testimony regarding involuntariness was more credible than Melinda's evidence of voluntariness. *Cf. Hall*, 858 P.2d at 1025 ("Unstated findings can be implied if it is reasonable to assume that the trial court actually considered the controverted evidence and necessarily made a finding to resolve the controversy, but simply failed to record the factual determination it made.").

¶12 Melinda also asserts that Tim "did not meet his burden of proving his self-employment income by simply stating he was capped [at] $180,000.00." She highlights her own "evidence of the transfer of monies, and deposits into [Tim's] personal account that totaled on average $27,034.14 a month over a twenty-three (23) month period." She also notes Tim's statement that the *draft* version of his 2013 income tax return could not be relied upon because it was still subject to change. But the mere existence of contradictory evidence relating to a question of fact does not render the factfinder's ultimate decision to believe one

---

4. Melinda did not object, before the district court, to the absence of a more explicit involuntariness finding.

account over another, or one portion of testimony over another, without adequate support. *See State v. Black*, 2015 UT App 30, ¶ 19, 344 P.3d 644 ("The existence of a conflict in the evidence does not render the totality of the evidence insufficient. It is the role of the factfinder to examine and resolve such conflicts.").

¶13 Here, the district court found that Tim's company had lost a major client, that the company's records showed a cessation of payments from that client, and that Tim "became a rainmaker for [the company] and his billable hours were reduced significantly as he pursued new business opportunities." The district court found that some of the deposits made to Tim's personal account could not properly be characterized as income because they included contributions from his roommate for "housing, food, and other household expenses." The court further found that Melinda had "provided no testimony or evidence rebutting [Tim's] testimony about his personal tax records." The district court concluded that there had been "a substantial change of circumstances that was not anticipated at the time the Decree [was entered] in that [Tim's] income was reduced by $7,000 per month from $22,000 per month [as] set forth in the Decree to $15,000 per month," and that "[s]uch change is not temporary in nature."

¶14 While there is admittedly evidence in the record that would support contrary findings, we conclude that adequate evidence supports the district court's findings, which in turn are adequate to support its conclusion that an unforeseen and involuntary change of circumstances had occurred. Accordingly, the district court did not abuse its discretion in determining that modification of the divorce decree was warranted.

## II. Modification of Alimony Award

¶15 Melinda next contends that "the alimony award must be based on the needs of [the] petitioner at the time of [the] decree of divorce and not [at the time of] the petition to modify." She argues that after the district court determined that modification

was appropriate, it should have considered her financial needs as originally established rather than reevaluating them. This position seems inconsistent with the very rationale of a court's continuing jurisdiction in divorce cases. *See* Utah Code Ann. § 30-3-5(8)(i)(i) (LexisNexis 2013) ("The court has continuing jurisdiction to make substantive changes and new orders regarding alimony based on a substantial material change in circumstances not foreseeable at the time of the divorce."). But we need not decide this issue today.

¶16 "Issues that are not raised at trial are usually deemed waived." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801. This preservation requirement is "based on the premise that, in the interest of orderly procedure, the trial court ought to be given an opportunity to address a claimed error and, if appropriate, correct it." *Wohnoutka v. Kelley*, 2014 UT App 154, ¶ 3, 330 P.3d 762 (citation and internal quotation marks omitted). Melinda does not identify any point in the record demonstrating that she presented the alleged error—that her needs assessment should not have been based on her current expenses—to the district court. *See* Utah R. App. P. 24(a)(5) (requiring an appellant's brief to address preservation or exceptions to the preservation requirement). Nor has our review of the record revealed any such presentation. *See Wohnoutka*, 2014 UT App 154, ¶ 6 ("An appellate court should not be asked to scour the record to save an appeal by remedying the deficiencies of an appellant's brief."). For these reasons, we do not consider Melinda's claim in this regard.[5]

---

5. In any event, Melinda's argument that a payor spouse should not be allowed to "shirk [his] financial responsibilities and unilaterally get rid of the obligations that create the need" relies on a finding that the payor spouse intentionally caused the shortfall. But the district court here implicitly determined that Tim did not intentionally cause his income reduction. This court has previously held that, when a payor spouse suffers an

(continued…)

### III. Vehicle Lease Provision

¶17 Melinda contends that the district court erred in amending the vehicle lease provision set forth in the original divorce decree. That provision required Tim to pay $1,528.01 per month for the lease payment on the vehicle driven by Melinda, to pay for a similar vehicle from the expiration of the lease until September 2016, and to pay all insurance and maintenance costs associated with the vehicles. The district court found that "[b]ecause of [Tim's] change in income and based on the Court's determination of alimony and child support with respect to both parties' financial declarations, there are no extra monies to provide for a similar type of vehicle." The court therefore ordered the substance of the provision removed from the divorce decree.

¶18 Melinda argues that property divisions, unlike alimony, are not readily modifiable absent "compelling findings." She relies on two cases decided by the Utah Supreme Court, both of which discussed real property. The supreme court held that "the outright abrogation of the provisions of [a property settlement agreement] is only to be resorted to with great reluctance and for compelling reasons." *Land v. Land*, 605 P.2d 1248, 1251 (Utah 1980). "Where a disposition of real property is in question, . . . courts should properly be more reluctant to grant a modification." *Foulger v. Foulger*, 626 P.2d 412, 414 (Utah 1981). This is because, "[i]n the interest of securing stability in titles, modifications in a decree of divorce making disposition of real property are to be granted only upon a showing of compelling reasons arising from a substantial and material change in circumstances." *Id.*

---

(…continued)
unintentional reduction in income, splitting or sharing the pain of the shortfall is an appropriate goal for alimony modification. *See Hansen v. Hansen*, 2014 UT App 96, ¶¶ 8, 13, 325 P.3d 864.

¶19    This claim fails for a number of independent reasons. First, the Utah authorities cited (and the rationale explained therein) concern only real property, not personal property such as a vehicle, and therefore do not clearly extend to personal property. Second, the provision at issue here requires Tim to pay amounts owed under a lease and therefore relates to a contract obligation rather than to property ownership in the classic sense. And third, even if the authorities cited applied to personal property and the provision at issue concerned personal property, the district court's conclusion that "there [has] been a substantial change of circumstances with respect to [Tim's] income," which we affirm *supra* ¶ 14, appears to satisfy any requirement that property settlement modifications "are to be granted only upon a showing of compelling reasons arising from a substantial and material change in circumstances." *See Foulger*, 626 P.2d at 414.

¶20    Melinda also argues that there is a discrepancy between the district court's findings. She notes that the court found that Tim has "approximately $4,080.00 left over monthly" and therefore decided to award modified alimony of $3,000.00. She asserts that this left $1,080.00 per month, contradicting the court's finding that "[b]ecause of [Tim's] change in income and based on the Court's determination of alimony and child support with respect to both parties' financial declarations, there are no extra monies to provide for a similar type of vehicle." Tim responds that the remaining $1,080.00 per month would be insufficient to satisfy the vehicle lease provision's requirement that he pay the lease of $1,528.01 per month plus associated insurance and maintenance costs, and that Melinda did not seek modification of the provision to require him to pay for a less expensive lease.

¶21    While the court could have modified the vehicle lease provision rather than eliminating it entirely, Melinda never asked the district court to do so or to explain any discrepancy between the rulings. Because Melinda did not present her challenge to the district court in such a way that the court had an opportunity to rule on it, the challenge is unpreserved.

*Wohnoutka v. Kelley*, 2014 UT App 154, ¶ 4, 330 P.3d 762 ("An issue is preserved for appeal only if it was presented to the trial court in such a way that the trial court had an opportunity to rule on it." (brackets, citation and internal quotation marks omitted)).

CONCLUSION

¶22   The district court's findings adequately supported its conclusion that the circumstances had substantially changed, and the court therefore did not abuse its discretion in determining that modification of the divorce decree was appropriate. Melinda did not preserve her challenge to the district court's decision to reevaluate her financial need at the time of the modification. She has also failed to show that the district court abused its discretion by eliminating the vehicle lease provision.

¶23   Affirmed.[6]

———————

6. Tim requests an award of attorney fees incurred on appeal. "A party seeking to recover attorney's fees incurred on appeal shall state the request explicitly and set forth the legal basis for such an award." Utah R. App. P. 24(a)(9). Because Tim does not set forth any legal basis for or authority in support of his attorney-fee request, we deny it.