2016 UT App 77

## THE UTAH COURT OF APPEALS

HOPE ANN MULLINS,
Appellee,
*v.*
ALAN CHRISTOPHER MULLINS,
Appellant.

Memorandum Decision
No. 20141025-CA
Filed April 14, 2016

Fifth District Court, St. George Department
The Honorable G. Michael Westfall
No. 124500424

Daniel J. Tobler and Benjamin L. Wilson, Attorneys
for Appellant

Robert W. Ickes and Sonia H. Ickes, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Memorandum Decision, in
which JUDGE STEPHEN L. ROTH and SENIOR JUDGE RUSSELL W.
BENCH concurred.[1]

TOOMEY, Judge:

¶1     In this case, we must determine whether the trial court
abused its discretion when it awarded Hope Ann Mullins (Wife)
$1,200 per month in alimony or when it considered her student-
loan debt in the distribution of the parties' debt. We conclude
that it did not and therefore affirm.

---

1. Senior Judge Russell W. Bench sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

BACKGROUND

¶2     Alan Christopher Mullins (Husband) and Wife married on August 16, 2002.[2] The parties had three children together and separated in October 2010. Wife filed for divorce in April 2012.

¶3     Wife was not employed during the marriage. Though Wife started college, the parties agreed she would be a stay-at-home mother and, consequently, Wife did not finish her degree. Husband has a bachelor's degree in criminal justice and, at the time of trial, was a mechanic for the United States Navy. He also maintained a second job at a gas station.

¶4     For the first few months of the separation, Wife had access to $4,000 a month from a joint bank account. After that Husband paid Wife $2,583 a month for a few months—$1,383 for child support and $1,200 for alimony as requested in her divorce petition.[3] Beginning in September 2012, Husband started paying only $1,383 a month for child support and provided no other financial support. As a result, Wife began supplementing her income with government assistance in January 2013.

¶5     During the August 2014 bench trial, the parties each submitted financial declarations and testified extensively regarding their respective incomes and expenses. The court found that Husband had a net monthly income of about $5,900.

_____

2. "On appeal from a bench trial, we view the evidence in a light most favorable to the trial court's findings, and therefore recite the facts consistent with that standard." *Kidd v. Kidd*, 2014 UT App 26, ¶ 2 n.1, 321 P.3d 200 (citation and internal quotation marks omitted).

3. The divorce petition requested that Husband receive alimony from Wife. But we assume this is an error because Wife clearly requested alimony from Husband, and Husband paid the requested amount for two months after being served with the petition.

It determined Husband had $740 per month in excess of his needs. The court imputed $2,276 total monthly income to Wife based on child support income of $1,426[4] and her projected earnings of $850.[5] Based on the parties' incomes and expenses, it ordered Husband to pay $1,272 per month in child support and $1,200 per month in alimony.

¶6 The trial court also made findings regarding the parties' debts. Wife testified she had a personal credit-card debt of $3,000, a debt with an electronics store of $1,200, and a student-loan debt of $23,000. Husband's financial declaration listed two credit-card debts solely in his name and student-loan debt, totaling $9,075 and $7,933 respectively. In addition, the parties had a joint consolidation loan of $8,328 and a joint credit-card debt of $5,774. The parties also jointly had a car loan, but Husband possessed the car and was paying the balance.

¶7 The court heard testimony on the nature of the debts and how they were accumulated and by whom. For example, both Husband and Wife testified regarding the shared credit-card debt, their student loans, and the car loan. Wife indicated that although they had a shared credit card, Husband was in possession of the card and she had not used it for the past four years. The court then made factual findings regarding which debts were marital debts. Specifically, the court concluded that even though Wife's student-loan debt was incurred after the couple's separation, it was a marital debt because it was incurred while the parties were married. The court ordered that each party be responsible for his or her separate debts, that Wife pay

---

4. This figure includes $1,272 from Husband and $154 she received in support for another child from a previous relationship.

5. Wife started a new job the week of trial, also at a gas station, but had not yet received a paycheck, so the court assessed her take-home pay based on her testimony of her expected income.

her student-loan debt, and that Husband pay the balance of the marital debts, including the shared credit card, car loan, and consolidation loan.

ANALYSIS

¶8      On appeal, Husband challenges the court's alimony award and the allocation of the marital debts. We address each of these issues in turn.

I. Alimony

¶9      Husband argues the trial court erred in calculating the alimony award because it did not properly consider Wife's needs or his ability to pay. "Trial courts have considerable discretion in determining alimony . . . and [determinations of alimony] will be upheld on appeal unless a clear and prejudicial abuse of discretion is demonstrated." *Boyer v. Boyer*, 2011 UT App 141, ¶ 9, 259 P.3d 1063 (alteration and omission in original) (citation and internal quotation marks omitted).

¶10      "The Utah Supreme Court has held that the purpose of alimony is to equalize the standard of living for both spouses, maintain them at their present standard of living as much as possible, and avoid the necessity of one spouse receiving public assistance." *Boyle v. Boyle*, 735 P.2d 669, 671 (Utah Ct. App. 1987). The court may not award alimony based on income equalization alone, but must also analyze "the financial needs and condition of the recipient spouse" and "the ability of the payor spouse to provide support." *Bakanowski v. Bakanowski*, 2003 UT App 357, ¶ 8, 80 P.3d 153; *see also* Utah Code Ann. § 30-3-5(8)(a)(i), (iii) (LexisNexis 2013). "In considering these factors, the trial court is required to make adequate factual findings on all material issues, unless the facts in the record are clear, uncontroverted, and capable of supporting only a finding in favor of the judgment." *Bakanowski*, 2003 UT App 357, ¶ 9 (citation and internal quotation marks omitted).

¶11   First, the court must look to the needs of the recipient spouse. Husband argues the trial court erred by basing Wife's alimony "needs on what she testified she needed for living expenses to provide for herself and her children at the time of trial." Rather, he argues, the trial court should have "determined [Wife's] need for alimony based upon her standard of living at the time she was married to [Husband]."

¶12   "Usually the needs of the spouses are assessed in light of the standard of living they had during marriage." *Martinez v. Martinez*, 818 P.2d 538, 542 (Utah 1991). But "[i]n some circumstances, it may be appropriate to try to equalize the spouses' respective standards of living." *Id.*; *accord* Utah Code Ann. § 30-3-5(8)(e), (f). "[T]he court shall consider all relevant facts and equitable principles and may, in its discretion, base alimony on the standard of living that existed at the time of trial." *Id.* § 30-3-5(8)(e).

¶13   Here, the court made detailed findings regarding Wife's needs. For example, the court found that Wife had access to $4,000 for several months after the separation and that although Wife testified her needs were $3,000 minimum, Wife's financial declaration, supplemented by her testimony, indicated that her monthly expenses were closer to $3,900. The court calculated Wife's needs to be in the range of $3,000 to $3,900 based on her testimony, her financial declaration, and the added expense of a car payment incurred after her financial declaration was submitted. After considering Wife's income,[6] the court stated, "If

---

6. Husband argues the trial court erred in determining Wife's take-home pay to be $850. We are not persuaded. Because Wife had not yet received a paycheck, her testimony was the only evidence before the court on which to make a determination. Husband offered no evidence to contradict her testimony, and rule 52(a) of the Utah Rules of Civil Procedure authorized the court to make findings on oral evidence.

I subtract her living expenses . . . she's upside down still about $1,625 every month, and he has an excess of $740." It explained,

> if [the court] order[ed] only [$740 in alimony], she's still upside down. She doesn't have anywhere near enough money to live on. . . . Essentially both of them are in a situation where they're going to have to cut back. . . . That's just using the $3,000. If [the court] actually use[d] her financial declaration, which shows her in—or need at about $3900, it becomes much more of a discrepancy.

¶14 We are not convinced that the court erred in considering Wife's needs in determining the alimony award. Although the court determined Wife's needs based on her standard of living after the parties' separation, it explained that Husband's and Wife's standards of living needed to be equalized because there was not enough income to meet either party's needs. The court determined that if Wife received all of the child support awarded to her and alimony of $1,200, Wife would "still have a deficit of as much as $424.00 each month and [Husband] a deficit of $460.00." The court thus awarded alimony of $1,200 a month "in order to equalize their respective standards of living." We also note that if the court had assessed Wife's needs according to the standard of living she had during the marriage as opposed to the time of trial, her needs would have been even greater because she had access to at least $4,000 per month until several months after their separation.

¶15 Second, Husband asserts the trial court erred in considering his ability to provide support when it ordered him to pay $1,200 a month in alimony notwithstanding the fact that he had only $740 in excess income. Specifically, he argues that, according to this court's holding in *McPherson v. McPherson*, "where there is not enough income to satisfy both parties' reasonable needs, the award must be within the payor spouse's ability to pay." 2011 UT App 382, ¶ 15, 265 P.3d 839.

¶16    In *McPherson*, the trial court ordered the husband to pay $1,531.43 more than his net monthly income. *Id.* ¶ 15. On appeal, this court explained that "[i]n the absence of detailed findings explaining the trial court's rationale for imposing obligations that [the husband] has no ability to meet, the alimony award exceed[ed] the discretion of the trial court." *Id.* ¶ 16. Our court later clarified that an alimony award solely "designed to cover [the recipient spouse's] needs," as in *McPherson*, is an abuse of discretion because alimony awards should attempt to equalize the parties' incomes. *Hansen v. Hansen*, 2014 UT App 96, ¶ 7, 325 P.3d 864 (citation and internal quotation marks omitted). The "equalization of income—also termed 'equalization of poverty'—is appropriate in situations in which one party does not earn enough to cover his or her demonstrated needs and the other party does not have the ability to pay enough to cover those needs." *Id.* (citation and internal quotation marks omitted). "[E]ven in *McPherson*, this court acknowledged that on remand the trial court would have 'discretion to make whatever other adjustments it deem[ed] necessary to achieve an equalization of the parties' standards of living or to explain its rationale for assigning a disproportionate percentage of the shortfall to one party.'" *Id.* (quoting *McPherson*, 2011 UT App 382, ¶ 16).

¶17    Unlike in *McPherson*, the court in this case made detailed findings regarding the alimony award. Instead of calculating an alimony award to cover Wife's needs, the court explicitly explained that it awarded the alimony amount of $1,200 per month "in order to equalize [the parties'] respective standards of living." The trial court judge explained that, "[I]f there's not enough money to support both families at the standard to which they're entitled and that they're used to, then I have to equalize the pain as much as I can." Indeed, the court determined that the $1,200 alimony award "allocates to each party an approximately equal share of the amount by which their apparent combined needs exceed their combined incomes ([Wife] would still have a deficit of as much as $424.00 each month and [Husband] a deficit of $460.00)." In making this determination, the court calculated that Wife's "monthly deficit for her household is approximately

$724.00 to $1,624.00 per month, assuming she [receives] all of the child support awarded to her. If this Court awards [Husband's] excess to [Wife], [she] still has a deficit of as much as $884.00 each month." The court calculated Wife's deficit by subtracting her living expenses (which ranges from the $3,000 figure she testified to and the $3,900 amount demonstrated by her financial declaration) from her income of $2,276. The court also looked at the relative financial situations of Wife and Husband and noted that Husband had a much more substantial income than Wife and should have paid her more than he did during the pendency of the proceedings. Husband also indicated he might be able to reduce his expenses by getting a less expensive car. Taking all of these circumstances into account, we are not convinced that the court erred in evaluating Husband's ability to pay alimony.

¶18    We therefore conclude the trial court did not abuse its discretion in determining the alimony award.

## II. Marital Debts

¶19    Husband next contends the trial court erred in its debt distribution. Although he argues the court erred by "dividing the parties' joint debts," his position appears to be that because Wife's student loan was arguably not a joint debt it should not have been considered in equalizing the parties' debt.

¶20    "[T]here is no fixed formula upon which to determine a division of debts" in a divorce action. *Rehn v. Rehn*, 1999 UT App 41, ¶ 19, 974 P.2d 306. Moreover, because trial courts are in the "best position to weigh the evidence, determine credibility and arrive at factual conclusions," *Boyle v. Boyle*, 735 P.2d 669, 670 (Utah Ct. App. 1987), they have "considerable latitude" and their actions "are entitled to a presumption of validity," *Finlayson v. Finlayson*, 874 P.2d 843, 847 (Utah Ct. App. 1994) (citations and internal quotation marks omitted). Accordingly, "it would be inappropriate for [an appellate court] to reverse on an isolated item of property or debt distribution." *Boyle*, 735 P.2d at 670. "Rather, [we] must examine the entire distribution to determine if the trial court abused its discretion." *Id.* at 670–71.

¶21 Here, the court equalized the parties' debts, taking into consideration each of their respective debts. The court indicated that it was "essentially ordering that each party keep whatever they have." In its order, the court stated,

> In terms of debt [Wife] owes about $23000.00 and [Husband] owes about $26500. Each party should retain their debts. [Wife] has about a $4200.00 benefit with this allocation. Each party should be required to pay his or her own debts acquired during the marriage; [Wife] should be required to pay her student loan and [Husband] should be required to pay his student loan debt, the consolidation debt, the visa debt; and the van debt. Other debts incurred by [Husband] are his separate debts and are not included in the calculations.

Although Wife is responsible for only her student-loan debt and Husband is responsible for his student-loan debt and the joint debts, each party's overall debt appears fairly equal. The court acknowledged that Wife has a benefit but explained she still "has substantial debt" and is only "ahead of him in order to equalize." This distribution was not inequitable given the employment status of the parties and Husband's superior earning capacity. *See Baker v. Baker*, 866 P.2d 540, 542–43 (Utah Ct. App. 1993) (placing the majority of the marital debts on one party was deemed equitable given the parties' relative earning capacities and current state of employment). Wife was employed at a gas station earning eight dollars an hour with a monthly net earned income of $850. Husband worked two jobs and had a monthly income of about $5,900—almost seven times Wife's income.

¶22 Furthermore, even if we assume that it was correct to characterize Wife's student loan as a separate debt, aside from Husband's assertion that the court "failed to follow the provisions of Utah Code Ann. §§ 30-3-5 and 30-2-5," Husband has not adequately briefed this argument. He has failed to

provide any citation to case law supporting his argument that the court cannot consider the parties' separate debts in an attempt to equalize their debts. *See State v. Thomas*, 961 P.2d 299, 304–05 (Utah 1998) (explaining that an appellate court will not address arguments that are not adequately briefed according to rule 24(a)(9) of the Utah Rules of Appellate Procedure with "citations to the authorities, statutes, and parts of the record relied on" and "development of that authority"). Moreover, the court did not make Husband "personally liable for [Wife's] separate debt." *See* Utah Code Ann. § 30-2-5(1) (LexisNexis 2013). Rather, it expressly made Wife liable for her student-loan debt and then allocated the joint debts to Husband to "equalize the parties' respective standards of living." *See id.* § 30-3-5(8)(f). We therefore determine the court did not abuse its discretion in allocating the marital debts to Husband.

CONCLUSION

¶23 We conclude the trial court did not abuse its discretion in its determination of alimony or its allocation of the parties' debts. We therefore affirm.

————