2011 UT App 382

**Cindi R. McPHERSON, Petitioner and Appellee,**

v.

**Gordon W. McPHERSON, Respondent and Appellant.**

**No. 20100823–CA.**

Court of Appeals of Utah.

Nov. 10, 2011.

---

⚖=597(1)

Joshua K. Peterman, Salt Lake City, for Appellant.

James H. Woodall, South Jordan, for Appellee.

Before Judges McHUGH, ORME, and VOROS.

## OPINION

McHUGH, Associate Presiding Judge:

¶ 1 Appellant Gordon W. McPherson (Husband) appeals both the trial court's calculation of his alimony obligation, and the trial court's denial of his request for a retroactive modification of his temporary alimony obligation. We reverse and remand.

## BACKGROUND

¶ 2 Husband and Cindi R. McPherson (Wife) were married on March 2, 1991. They soon celebrated the birth of two children, a daughter in 1992 and a son in 1994. Husband has a high school education and was employed as a diesel mechanic for the first sixteen years of the marriage. In 2007, after Husband had been employed as a diesel mechanic by Wheeler Machinery for approximately twelve years, he was promoted to Product Sales and Support Representative (PSSR). In this new position, Husband received a dramatically higher salary than he had received as a diesel mechanic. For example, between 1991 and 2006, Husband's average income was approximately $47,000 per year or $3,917 per month. However, between 2007 and 2009, Husband's average income increased to $172,620 per year or $14,385 per month. As a PSSR, Husband maintained contact with clients of Wheeler Machinery, and in the course of this work he apparently developed a romantic relationship with a young woman employed by one such client.

¶ 3 On September 25, 2009, Wife filed for divorce, citing "irreconcilable differences resulting from [Husband's] abuse of alcohol, domestic violence, and an extramarital affair." That same day, Wife filed a motion for temporary orders on child support and alimony. On October 30, 2009, the domestic relations commissioner held a hearing on the matter. Based on the significant income Husband earned as a PSSR, the commissioner recommended that Husband pay temporary child support of $1,965 per month and temporary alimony of $2,425 per month.

¶ 4 At some point, Husband's relationship with the client's employee was discovered by one of her coworkers. As explained by the trial court, the coworker "became protective of the woman and ... sought to track or trace the movements of [Husband] relative to [Husband's] contacts with that woman, evidently believing that the woman and [Husband] were having some type of relationship of which [the coworker] did not approve." This angered Husband, who called the woman's coworker and left a threatening voicemail. The woman's coworker informed his employer, and the company contacted Wheeler Machinery and reported the incident. As a result, on November 25, 2009, Husband was terminated for violating company policy.

¶ 5 On December 1, 2009, the court adopted the commissioner's original recommendation and ordered Husband to pay a total of $4,390 per month in child support and alimony obligations effective November 1, 2009 (temporary support order). The trial court was unaware at that time that Husband had been fired recently.

¶ 6 On December 14, 2009, Husband obtained a new job as a diesel mechanic earning a gross monthly salary of $4,680. Although the new job pays significantly less than his former PSSR salary, his present salary is higher than what he previously received as a diesel mechanic.

¶ 7 On December 15, 2009, Husband moved to amend the temporary support order in an attempt to recalculate his child support and alimony obligations in accordance with his decreased salary as a diesel mechanic. At a hearing on January 11, 2010, the commissioner recommended a denial of Husband's request because the commissioner had insufficient evidence to determine whether Husband was voluntarily underemployed. The commissioner also recommended that the question be certified for trial. Husband filed an objection to the commissioner's recommendation, arguing that he was not voluntarily underemployed and that it was impossible for him to comply with the temporary alimony and child support orders on his present income.

¶ 8 On January 13, 2010, Husband was notified by Utah's Office of Recovery Services that his income would be garnished to collect the $4,390 in total monthly support obligations.[1] On February 8, 2010, Husband requested oral argument regarding his objection to the commissioner's January 11, 2010 recommendation. At a second hearing before the commissioner on February 26, 2010, the commissioner again denied Husband's request for a recalculation of his support obligations. Husband filed a renewed objection to the commissioner's recommendations.

¶ 9 On March 12, 2010, the trial court adopted the commissioner's recommendation from January 11, 2010, ordered Husband to continue complying with the temporary support order, and certified for trial the issue of whether to amend Husband's support obligations. Five days later, Husband requested a decision regarding his objection to the commissioner's recommendation that Husband's second request to modify his support obligation be denied. The trial court again rejected Husband's request, explaining that Husband's income had been reduced due to a voluntary act and that he therefore retained the ability to earn. Husband again filed an objection.

¶ 10 The trial court issued a bifurcated divorce decree on May 6, 2010, which awarded a decree of divorce on the grounds of irreconcilable differences but reserved all other issues for trial. After a bench trial, the trial court issued a memorandum decision on July 1, 2010, and then the trial court amended that decision on August 4, 2010. The trial court denied Husband's request for retroactive modification of his support obligations, but reduced his future support obli-

gations to a total of $1,651 per month ($851 in child support and $800 in alimony). Husband appeals from the trial court's amended decision.

## ISSUES AND STANDARDS OF REVIEW

¶ 11 First, Husband claims that the trial court erred in calculating his alimony obligation using his gross income, rather than his net income. "When reviewing a trial court's determination of alimony . . . an appellate court reviews [it] for abuse of discretion." *Willey v. Willey*, 951 P.2d 226, 230 (Utah 1997).

¶ 12 Second, Husband claims that the trial court erred in denying his request for a retroactive modification of his temporary support obligations. A district court's determination regarding the retroactive modification of a spousal support obligation is reviewed for an abuse of discretion. *See Wilde v. Wilde*, 2001 UT App 318, ¶¶ 23, 30, 35 P.3d 341. However, conclusions of law are reviewed for correctness. *See Connell v. Connell*, 2010 UT App 139, ¶ 6, 233 P.3d 836.

## ANALYSIS

### I. The Trial Court Was Required to Consider Husband's Tax Obligations When Calculating Alimony.

¶ 13 Husband claims that the trial court erred by using his gross income to calculate alimony payments rather than his net income. Trial courts are required to consider certain statutory factors when calculating alimony obligations.[2] *See* Utah Code Ann. § 30–3–5(8)(a) (Supp.2011).[3] "Failure to consider these factors constitutes an abuse

---

1. Record evidence indicates that Husband's net monthly income was $3,074.57 at that time. Therefore, the amount of Husband's total support obligations was more than 140% of Husband's net monthly income.

2. Utah Code section 30–3–5(8)(a) provides,
   The court shall consider at least the following factors in determining alimony: (i) the financial condition and needs of the recipient spouse; (ii) the recipient's earning capacity or ability to produce income; (iii) the ability of the payor spouse to provide support; (iv) the length of the marriage; (v) whether the recipient spouse has custody of minor children re-

quiring support; (vi) whether the recipient spouse worked in a business owned or operated by the payor spouse; and (vii) whether the recipient spouse directly contributed to any increase in the payor spouse's skill by paying for education received by the payor spouse or allowing the payor spouse to attend school during the marriage.
   Utah Code Ann. § 30–3–5(8)(a) (Supp.2011).

3. Because the material provisions of the statute have not changed, we cite the current version of the Utah Code as a convenience to the reader.

of discretion." *Rehn v. Rehn,* 1999 UT App 41, ¶ 6, 974 P.2d 306. In order to demonstrate adequate consideration of each factor, the trial court's findings " 'should be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached.' " *Stevens v. Stevens,* 754 P.2d 952, 958 (Utah Ct.App.1988) (quoting *Acton v. Deliran,* 737 P.2d 996, 999 (Utah 1987)); *see also Ruhsam v. Ruhsam,* 742 P.2d 123, 126 (Utah Ct.App.1987) ("[T]here must be some clear rationale for the level of alimony consistent with the stated criteria."). "A trial court's failure to provide adequate findings is reversible error when the facts are not clear from the record." *Andrus v. Andrus,* 2007 UT App 291, ¶ 17, 169 P.3d 754. A sufficiently detailed finding regarding the statutory factor relevant to the present appeal—the payor spouse's ability to pay—includes consideration of the payor spouse's tax obligations. *See id.* ¶¶ 17–18 (reversing the trial court's calculation of alimony based on the payor spouse's gross income instead of net income); *see also Paffel v. Paffel,* 732 P.2d 96, 102 (Utah 1986) (finding that even possible tax benefits resulting from alimony payments are relevant to the court's finding of the payor spouse's ability to pay).

¶ 14 Husband objected to the trial court's findings of fact and conclusions of law, arguing that the court had not appropriately considered his ability to pay. In response, the trial court explained that although it did not make an explicit finding regarding the payor spouse's ability to pay, it was "inherent in the court's findings and discussion." However, we can find nowhere in the record where the trial court explains its failure to consider Husband's tax obligations when making its alimony determination. In an attempt to justify the trial court's use of Husband's gross income to determine the alimony award, Wife asserts that Husband presented insufficient evidence to permit the trial court to use his net income in its calculations.

Specifically, Wife notes that Husband provided only a single wage stub as evidence of his net income. However, Wife has not otherwise challenged Husband's evidence of net income, which includes a revised financial declaration. The declaration calculates Husband's tax obligations and indicates that his net income is $3,074.57 per month.[4]

¶ 15 The trial court, in its amended ruling, found that Husband has reasonable monthly expenses in the amount of $2,955. In addition, Husband was ordered to pay $851 per month in child support and $800 per month in alimony. Husband's reasonable monthly expenses plus his child support and alimony obligations total $4,606. This obligation exceeds his net monthly income by $1,531.43. The trial court also found that Husband was involuntarily terminated from his position as a PSSR and was unlikely to find employment in that salary range again. Given Husband's lower salary as a diesel mechanic, there are not enough financial resources available to support the parties' needs at their current standard of living. Under these circumstances, a trial court should calculate support obligations "with an eye towards equalizing the parties' standards of living." *Batty v. Batty,* 2006 UT App 506, ¶ 5, 153 P.3d 827. Here, in addition to the other statutory factors, the trial court considered

> the standard of living during the marriage both during the "normal" years when [Husband] was a diesel mechanic and the "higher earning" years when he was a PSSR.... Principally the court considers the need of [Wife] based largely on their standard of living at the time of trial and during [sixteen] of the [nineteen] years of the marriage, her own ability to meet those needs, and the ability of [Husband] to make up that difference.

Based upon those considerations, the trial court calculated an alimony amount designed to cover Wife's needs and determined Husband's ability to pay that amount based on

---

4. Without record support, Husband's brief on appeal indicates that his net monthly income is approximately $3,270 per month. For purposes of our decision, we rely on the revised financial declaration that is part of the record on appeal. *See Cooper v. Foresters Underwriters, Inc.,* 123

Utah 215, 257 P.2d 540, 540 (1953) ("[Appellate courts] cannot consider facts stated in the briefs which may be true but [are] absent in the official record."). By doing so, we do not intend to preclude the trial court from considering whatever evidence it deems appropriate on remand.

his gross monthly income. While we appreciate the difficult task a trial court faces in attempting to fashion an appropriate alimony award in circumstances like the present where there is not enough income to satisfy both parties' reasonable needs, the award must be within the payor spouse's ability to pay. Here there is nothing in the trial court's order that addresses the fact that Husband no longer nets enough income to support Wife and their children at the standard of living enjoyed during the marriage.

¶ 16 Although trial courts have significant discretion in making support determinations, and may impose disproportionately burdensome obligations on one party based upon findings relating to certain discretionary factors, including fault, the trial court did not make a finding on any such factor here. *See Boyer v. Boyer*, 2011 UT App 141, ¶ 12, 259 P.3d 1063 (noting that trial courts may consider fault in making a support determination); *see also Myers v. Myers*, 2010 UT App 74, ¶ 11 n. 3, 231 P.3d 815 (discussing conflict between the panels of the Utah Court of Appeals concerning the application of the fault factor). Indeed, the trial court expressly rejected fault as a justification for the award, stating, " 'Fault' is of course difficult, but in any event . . . fault is not considered much of a factor at this point or in this case." (Citation omitted.) Likewise, the trial court found that Husband was not voluntarily underemployed, thereby eliminating a justification for imputing higher income to him. In the absence of detailed findings explaining the trial court's rationale for imposing obligations that Husband has no ability to meet, the alimony award exceeds the discretion of the trial court. *See Andrus*, 2007 UT App 291, ¶ 17, 169 P.3d 754. Consequently, we reverse and remand for recalculation of Husband's alimony obligation, taking into consideration his tax obligations and actual ability to pay. In doing so, we acknowledge the trial court's discretion to make whatever other adjustments it deems necessary to achieve an equalization of the parties' standards of living or to explain its rationale for assigning

a disproportionate percentage of the shortfall to one party.

## II. The Trial Court Exceeded Its Discretion in Denying Husband's Requests for Retroactive Modification of the Temporary Support Obligations.

¶ 17 Husband also claims that the trial court erred in declining to modify the alimony award in the temporary support order retroactively. In response, Wife argues that Utah courts are unable to modify temporary support obligations once they become due.[5] Contrary to Wife's assertion, trial courts are statutorily empowered to modify spousal support payments retroactively. *See Wall v. Wall*, 2007 UT App 61, ¶¶ 19–20, 157 P.3d 341 (interpreting the 2006 version of Utah Code section 78-45-9.3(4)). Indeed, trial courts have broad discretion in this area. *See Ostler v. Ostler*, 789 P.2d 713, 715 (Utah Ct.App.1990) ("Once the trial court has made a determination on modification, we accord its ruling substantial deference."). Yet, the statute does limit the time period during which retroactive modification is available. "[S]pousal support payment[s] under a support order may be modified with respect to any period during which a modification is pending, but only from the date of service of the pleading on the obligee, if the obligor is the petitioner. . . ." Utah Code Ann. § 78B–12–112.

¶ 18 Husband served Wife with his motion to amend the temporary support order on December 14, 2009. Yet, the temporary alimony award remained in effect until the trial court's memorandum decision on July 1, 2010. Therefore, Husband contends that he is entitled to a retroactive adjustment of the temporary alimony award paid from January 1, 2010, through July 1, 2010. We agree that the trial court had discretion to grant Husband's motion for retroactive modification for any or all of that period. *See id.* § 78B–12–112(4). Despite that discretion, the trial court refused to adjust the temporary alimony and child support awards.

---

5. Wife's brief cites to a single case, *Whitehead v. Whitehead*, 836 P.2d 814 (Utah Ct.App.1992), for the proposition that temporary support orders cannot be modified retroactively. However, *Whitehead* has been abrogated by statute on the very point for which Wife's brief relies on it. *See* Utah Code Ann. § 78B–12–112 (2008).

¶ 19 On March 12, 2010, the trial court issued an order with regard to Husband's initial request for modification of the temporary support order, explaining that the request was denied because "[a]lthough there has been a dramatic change in circumstance[s] in the parties' incomes which impacts [Husband's] ability to pay alimony and child support, the Court has very little evidence to make a determination as to what brought this about and whether [Husband] is voluntarily unemployed." Then, on April 30, 2009, the trial court issued an order addressing Husband's objection to the commissioner's second recommendation that the temporary alimony award remain in effect. The trial court explained its reasoning for again denying Husband's request for a retroactive modification of his temporary support obligations as follows:

Although [Husband] has suffered a reduction in income, the reason for the reduction is [Husband's] voluntary act. Although the court recognizes the current economic realities of the existing Order, case law on this issue is clear, and binding on this Court. *See, e.g., Young v. Young,* [2009 UT App 3, ¶ 13,] 201 P.3d 301[ ] (citing *Proctor v. Proctor,* 773 P.2d 1389 (Utah Ct.App.1989)). [Husband] retains the ability to earn. His Motion to Amend is therefore denied.

Both denials of Husband's request for modification were premised on the commissioner's concern that Husband's sudden decrease in income was due to his voluntary underemployment. After trial on that issue, however, the court resolved the question in favor of Husband, stating that

the issue [is] whether the court should impute such a higher figure because he was terminated from that job "voluntarily," that is, because of his own conduct....

. . . .

The termination was in one sense "voluntary" in that [Husband] was terminated because of his own actions rather than a work force reduction, poor economy, closure of a business, or other reasons not associated with his conduct. The court does not believe simply that misdeeds at work justify a finding that the termination

should result in an imputation of higher income....

. . . .

... the court finds that the termination was *NOT for the purpose of lowering payments to his children or lowering alimony payments to [Wife]. He acted voluntarily in getting terminated, though it was not his intent to be fired nor halt paying [Wife].*

(Emphasis added.) Thus, the trial court found that Husband was not voluntarily underemployed and reduced Husband's future support obligations based on that finding. Notwithstanding that finding, the trial court refused to modify the temporary award on the grounds that there was "no basis in law, fact, or equity to retroactively reduce the amounts." We disagree.

¶ 20 "Trial courts have considerable discretion in determining alimony," *Howell v. Howell,* 806 P.2d 1209, 1211 (Utah Ct.App. 1991), and harsh awards or a disparity in obligations can be justified by a finding of one or more discretionary factors, *see Bakanowski v. Bakanowski,* 2003 UT App 357, ¶¶ 13, 16, 80 P.3d 153 (recognizing the trial court's discretion to consider additional factors when calculating alimony awards so long as such determinations are based on clearly understandable factual findings). However, here the trial court specifically foreclosed a finding of fault and did not identify any other explanation for the imposition of a temporary award beyond Husband's financial capability.

¶ 21 To the contrary, the trial court found that the commissioner's recommendations regarding the temporary support obligations were based on an erroneous assumption that Husband had, through his volitional misdeeds, voluntarily abandoned his higher paying job. While an appropriate finding of voluntary underemployment and a resulting decision to impute income at a higher level may serve to motivate a spouse to seek employment more in line with his true earning capacity, this finding must be a statement of present reality. The trial court carefully considered the evidence and then found that Husband was not voluntarily underemployed and would likely never earn a salary in the range of what he enjoyed during his years as

a PSSR. Thus, there was no justification for imputing a higher income to Husband.

¶ 22 Additionally, after Husband's termination from his position as a PSSR, he returned to his prior profession as a diesel mechanic. Husband now earns a net income of $3,074.57 per month. The trial court found that Husband's reasonable monthly expenses were $2,955 per month. Even setting aside Husband's potential obligation for his children's medical expenses, for the period between January 1, 2010, until July 1, 2010, his temporary child support and alimony obligations totaled $4,390 per month. If that amount is added to Husband's reasonable monthly expenses, Husband's obligations as determined by the trial court were $7,345 per month. Applying Husband's net income to that obligation results in a monthly shortfall of $4,270.43. Husband simply does not earn enough after-tax dollars to pay the temporary support amounts awarded by the trial court.

¶ 23 Under these circumstances, the trial court should have retroactively modified Husband's temporary support obligation. Even if the commissioner's recommendations seemed well founded at the time of the hearings, once the premise of that decision was proved inaccurate, there was no reasoned basis to impose temporary support obligations that were mathematically impossible for Husband to pay. We therefore conclude that the trial court exceeded its discretion in refusing to modify the temporary award retroactively, and we reverse with instructions to modify the temporary alimony award retroactively to January 1, 2010, in an amount the trial court deems appropriate based on Husband's actual ability to pay, as well as the other statutory factors as determined on remand.

## CONCLUSION

¶ 24 The trial court's findings of fact do not support a conclusion that Husband has the ability to pay the alimony obligation. Further, the trial court exceeded its discretion when it refused to modify Husband's alimony obligations retroactively despite finding that the premise underlying the imputation of income to Husband was inaccurate. We re-

verse the trial court's amended decision and remand for reconsideration of the alimony award in light of Husband's ability to pay and for retroactive modification consistent with this decision. In doing so, we do not intend to limit the trial court's ability to make whatever additional modifications it deems appropriate on remand.

¶ 25 Reversed and remanded.

¶ 26 WE CONCUR: GREGORY K. ORME and J. FREDERIC VOROS JR., Judges.