2017 UT App 120

## THE UTAH COURT OF APPEALS

ELENA KAY CHRISTENSEN,
Appellee,
*v.*
BRENT CHRISTENSEN,
Appellant.

Opinion
No. 20150994-CA
Filed July 20, 2017

Second District Court, Ogden Department
The Honorable Ernest W. Jones
No. 094901718

Randall W. Richards, Attorney for Appellant

Elena Kay Christensen, Appellee Pro Se

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGES KATE A. TOOMEY and DAVID N. MORTENSEN concurred.

VOROS, Judge:

¶1 Brent Christensen and Elena Kay Christensen (now Elena Watts) divorced in 2012.[1] Brent has since retired and Elena has shared a residence with another man. Based on these and other factors, Brent filed a petition to modify his child support and alimony obligations. The trial court ruled that Elena was not cohabiting and thus refused to terminate alimony. The court also reduced the alimony payment, but prospectively only; refused to modify child support; and awarded Elena a money judgment for

---

1. In cases where the parties shared a last name, our practice is to refer to them by their first name, with this court intending no disrespect by the apparent informality. *Earhart v. Earhart*, 2015 UT App 308, ¶ 2 n.1, 365 P.3d 719.

arrearages. Because the court considered a legally irrelevant factor in determining cohabitation, we remand for further findings on that question. In all other respects, we affirm.

BACKGROUND

¶2     Brent and Elena divorced in October 2012. The trial court awarded the parties joint legal and physical custody of their four children. At the time of the divorce, Brent was employed as a school teacher with a monthly income of $4,749.15. Elena had stayed at home to care for the children during the marriage, but the court found her capable of employment and imputed to her a monthly income of $1,365. The court ordered Brent to pay $1,200 per month in alimony and $548 per month in child support. When Brent retired in September 2014, he stopped paying alimony and child support, and Elena began receiving about $800 per month as a share of his pension.

¶3     The following year Brent filed a petition to modify alimony and child support. He sought to terminate alimony on the ground that Elena was cohabiting with her boyfriend. He also claimed a material change in his income due to retirement. Specifically, he maintained that he was unable to work due to stress from the divorce and was thereby forced to retire. He asserted that he had a constitutional right to retire, as friends his age had done, and that he wanted to be a stay-at-home parent. In response, Elena sought an award of unpaid alimony and child support.[2]

---

2. Brent had previously filed a petition for an order to show cause for Elena's failure to pay her portion of the children's health insurance premiums and had obtained a judgment against her for $1,674.90. Elena requests that we vacate the $1,674.90 judgment against her for insurance premium arrears.

(continued…)

¶4     Following a hearing, the trial court ruled on the petition to modify. The court denied Brent's request to terminate alimony on the basis of Elena's cohabitation. The court found that the evidence failed to establish cohabitation; the court noted particularly that Elena did not hold herself out as the spouse of her boyfriend or share living expenses, assets, or bank accounts with him.

¶5     The court also rejected Brent's claim that his retirement justified a termination or reduction in alimony. The court found that Brent "is physically and mentally able to work and provide for the family" and that, while his income had decreased, so had his expenses. The court therefore set his monthly income at $4,700 "consistent with his historical earnings."

¶6     However, the court reduced Brent's alimony obligation by the amount of the monthly retirement payments to Elena from Brent's pension, setting alimony at $400 ($1200 less $800) for future payments only.

¶7     The court then denied Brent's petition to modify child support. The court ruled that child support would remain at $548 per month, finding that amount to be "appropriate based on the income of each parent."

---

(…continued)

However, this claim of error is not properly before us because Elena "failed to bring [it] either by way of a cross-appeal or by separate petition for interlocutory appeal." *See State v. Coble*, 2010 UT App 98, ¶ 10, 232 P.3d 538 ("'[Litigants must] cross-appeal or cross-petition if they wish to attack a judgment of a lower court for the purpose of enlarging their own rights or lessening the rights of their opponent.'" (alteration in original) (quoting *State v. South*, 924 P.2d 354, 355 (Utah 1996))). We therefore do not address it further.

¶8    Finally, the court entered judgment against Brent in the amount of $19,043.61 for alimony and child support arrears as of October 1, 2015.

ISSUES AND STANDARDS OF REVIEW

¶9    Brent asserts four claims of error on appeal. First, he contends that the trial court erred in finding that the evidence did not establish that Elena cohabited with another man. "Whether cohabitation exists is a mixed question of fact and law. While we defer to the trial court's factual findings unless they are shown to be clearly erroneous, we review its ultimate conclusion for correctness." *Myers v. Myers* (*Myers I*), 2010 UT App 74, ¶ 10, 231 P.3d 815 (citations and internal quotation marks omitted), *aff'd*, *Myers v. Myers* (*Myers II*), 2011 UT 65, 266 P.3d 806.

¶10    Second, Brent contends that the trial court erred in finding him capable of employment. A "[trial] court's determination that [a party] is capable of employment is within the sound discretion of the trial court since the court is in an advantaged position to weigh the evidence, determine the persuasive value of the evidence, and make determinations based on the evidence." *Leppert v. Leppert*, 2009 UT App 10, ¶ 12, 200 P.3d 223. Brent also challenges the related findings that no substantial change in circumstances warranted modification of alimony, that he is voluntarily unemployed, and that his employment capacity and earning potential support imputation of income. "The determination of the trial court that there [has or has not] been a substantial change of circumstances . . . is presumed valid, and we review the ruling under an abuse of discretion standard." *Busche v. Busche*, 2012 UT App 16, ¶ 7, 272 P.3d 748 (alteration and omission in original) (citation and internal quotation marks omitted). We also review the trial court's finding of voluntary unemployment or underemployment and its calculation of imputed income for an abuse of discretion. *See Rayner v. Rayner*,

2013 UT App 269, ¶ 4, 316 P.3d 455. "We will not disturb a trial court's findings of fact unless they are clearly erroneous, that is, unless they are in conflict with the clear weight of the evidence, or this court has a definite and firm conviction that a mistake has been made." *Pope v. Pope*, 2017 UT App 24, ¶ 4, 392 P.3d 886 (citation and internal quotation marks omitted).

¶11   Third, Brent contends that the trial court erred in declining to apply the modification of the alimony award retroactively. "A [trial] court's determination regarding the retroactive modification of a spousal support obligation is reviewed for an abuse of discretion." *McPherson v. McPherson*, 2011 UT App 382, ¶ 12, 265 P.3d 839.

¶12   Fourth, Brent contends that the trial court erred in its child support calculation. We review decisions on child support under the abuse of discretion standard. *Andrus v. Andrus*, 2007 UT App 291, ¶ 9, 169 P.3d 754.

ANALYSIS

I. Cohabitation

¶13   Brent contends that the trial court erred in ruling the evidence of shared common residency and consistent sexual relations did not establish cohabitation. Specifically, he argues that "the evidence established that [Elena] was living together with her boyfriend as a family, sharing the same bedroom and engaging in normal sexual relations." He also alleges that the trial court "ignored [Elena's admission] that she paid rent and all of the expenses for food and everything" in the household. Finally, he argues that the fact that Elena and her boyfriend did not hold themselves out to be husband and wife has never been a criterion for determining cohabitation.

¶14   "Any order of the court that a party pay alimony to a former spouse terminates upon establishment by the party

paying alimony that the former spouse is cohabitating with another person." Utah Code Ann. § 30-3-5(10) (LexisNexis 2013). Utah courts have not delineated a list of required elements for cohabitation, but instead have identified "general hallmarks of marriage (and thus cohabitation)." *Myers II*, 2011 UT 65, ¶ 24, 266 P.3d 806. "Those hallmarks include a shared residence, an intimate relationship, and a common household involving shared expenses and shared decisions." *Id.* Other relevant considerations include "the length and continuity of the relationship, the amount of time the couple spends together, the nature of the activities the couple engages in, and whether the couple spends vacations and holidays together." *Id.* ¶ 24 n.3. However, whether the couple has a reputation as being married, or hold themselves out as being married, is not a relevant consideration in determining cohabitation for purposes of section 30-3-5(10). *Id.* ¶ 24 n.4.[3]

¶15    Here, Elena acknowledged that she was sharing a bedroom with her boyfriend. However, when asked whether she was cohabiting with him, she responded that after she was evicted from her home, she "had nowhere to go so [she] moved in at [his] address." She signed a written "Living Arrangement Agreement" in which she agreed to pay $500 per month "to help with the payment of the mortgage and the cost of utilities as part of [her] contribution of living expenses" for herself and her four children.

¶16    The trial court noted that Elena admitted that "she shares common residency with a man and that they have sexual relations." The court reasoned that although these factors are relevant, "they do not satisfy the definition of cohabitation"

---

3. In contrast, the fact that a couple "hold themselves out as and have acquired a uniform and general reputation as" spouses is a badge of a valid—though unsolemnized—marriage. *See* Utah Code Ann. § 30-1-4.5(1)(e) (LexisNexis 2012).

under *Myers I*, 2010 UT App 74, 231 P.3d 815, and related cases. The court then considered the following additional factors. First, it found "no evidence that [Elena] held herself out as the wife [of] the boyfriend." The court also found that she and the boyfriend "did not have a reputation as husband and wife." Finally, it found no evidence that she "shared living expenses, assets, or bank accounts with the boyfriend." Relying on these factors, the court concluded that the "evidence is insufficient to establish cohabitation as outlined in [*Myers I*]." It therefore denied Brent's petition to terminate alimony on the basis of cohabitation.

¶17   First, as noted above, Brent is correct that whether two people hold themselves out, or have a reputation, as being married plays no part in the cohabitation analysis for purposes of determining whether alimony must be terminated. *See Myers II*, 2011 UT 65, ¶ 24 n.4. Thus, the trial court erred in relying on this factor. However, the court correctly found that no evidence supported a finding that Elena and her boyfriend share living expenses, assets, or bank accounts. On the contrary, she paid him room and board pursuant to the terms of a written agreement.

¶18   In sum, Elena and her boyfriend share a residence and an intimate relationship but not living expenses. But the record does not show evidence of the other pertinent considerations outlined above. For example, the record does not show that they jointly make life decisions. Nor does the record show the length of their relationship, the amount of time they spend together, or whether they spend vacations and holidays together. *See id.* ¶ 24 n.3 (noting that "these considerations [are] not prerequisites or requirements," but are relevant to the "broader picture" of "whether a relationship resembles that of a married couple"). Thus, on this record we cannot say that the trial court's erroneous reliance on the couple's reputation was harmless. Accordingly, we remand this issue to the trial court to rebalance the factors and determine in the first instance whether the

evidence shows that Elena and her boyfriend are cohabiting under section 30-3-5(10) as construed in *Myers II*.

## II. Employment

¶19　Brent next contends that the trial court erred in finding that he was capable of full-time work. He argues that because the trial court did not "make any findings supporting that he was employable," it should not have imputed "additional income to his $3,037 per month retirement benefit." He further argues that the trial court should have considered that he wanted to be a stay-at-home father, that "his medical practitioner advised retirement," and that he was "forced to retire due to physical and psychological problems."

¶20　After entering a divorce decree, "[t]he court has continuing jurisdiction to make substantive changes and new orders regarding alimony based on a substantial material change in circumstances not foreseeable at the time of the divorce." Utah Code Ann. § 30-3-5(8)(i)(i) (LexisNexis 2013). Thus, to succeed on a petition to modify, "the moving party must first show that a substantial material change of circumstance has occurred since the entry of the decree and [second, that the change was] not contemplated in the decree itself." *Diener v. Diener*, 2004 UT App 314, ¶ 7, 98 P.3d 1178 (alteration in original) (citation and internal quotation marks omitted). The "party seeking modification . . . has the burden of showing a substantial change in circumstances." *Id.* (omission in original) (citation and internal quotation marks omitted).

¶21　The trial court must first determine whether a substantial change in circumstances warrants consideration of the modification petition, and if so, then the court will conduct the imputation analysis. *Busche v. Busche*, 2012 UT App 16, ¶ 13, 272 P.3d 748. The imputation analysis "involves determining whether [a party] is voluntarily unemployed or underemployed and, if so, how much income ought to be imputed." *Id.* "A

person is voluntarily unemployed or underemployed when he or she intentionally chooses of his or her own free will to become unemployed or underemployed." *Ouk v. Ouk*, 2015 UT App 104, ¶ 7, 348 P.3d 751 (citation and internal quotation marks omitted).

¶22    "If income is imputed to a parent, the income shall be based upon employment potential and probable earnings considering, to the extent known: employment opportunities; work history; occupation qualifications; . . . and prevailing earnings and job availability for persons of similar backgrounds in the community." Utah Code Ann. § 78B-12-203(8)(b) (LexisNexis 2012). "Imputation cannot be premised upon mere conjecture; instead, it demands a careful and precise assessment requiring detailed findings." *Rayner v. Rayner*, 2013 UT App 269, ¶ 10, 316 P.3d 455 (citation and internal quotation marks omitted). Thus, "the trial court must enter not just a finding of voluntary unemployment . . . but specific, detailed findings as to the evidentiary basis for the imputation." *Id.* (citation and internal quotation marks omitted). To challenge the trial court's findings, Brent must marshal the evidence in support of its decision and demonstrate that, despite this evidence, "the trial court's findings are so lacking in support as to be 'against the clear weight of the evidence,' thus making them 'clearly erroneous.'" *See Hagan v. Hagan*, 810 P.2d 478, 481 (Utah Ct. App. 1991) (quoting *In re Estate of Bartell*, 776 P.2d 885, 886 (Utah 1989)).

¶23    Here, the trial court began by considering Brent's claim of "a material change in income to justify modification." The court found that Elena's income increased from $1,365 to $1,640 per month (not including her share of Brent's pension) and that Brent's monthly income decreased from $4,749 from his salary as a school teacher to $3,037.33 from his retirement pension. However, the court also found that Brent's monthly expenses decreased—in particular, that he had "no house payment or vehicle payment." Relying on these calculations, the court concluded that "[w]hile [Brent's] income has decreased so have

his expenses." Thus, the court did not find his change in income to be a substantial change in circumstances justifying modification of alimony.

¶24 Brent has not challenged any of these factual findings as clearly erroneous. Instead, he cursorily argues that his retirement "resulted in a significant reduction to his personal income." But he "has neither marshaled the evidence in support of the trial court's decision nor demonstrated that despite this evidence, the trial court's findings are so lacking in support as to be against the clear weight of the evidence." *See id.* at 483. Accordingly, he has not overcome the presumption that the court did not abuse its discretion in concluding that there was no substantial change in circumstances warranting modification of alimony. *See Busche*, 2012 UT App 16, ¶ 7.

¶25 The court also addressed the issue of whether Brent was voluntarily unemployed. Brent testified to four reasons why he was not working: that he had "a constitutional right to retire and remain retired after teaching 32 years in the public school education profession"; that he "was forced to retire by the Ogden City School District or [he] would have probably been fired"; that "many of [his] peers that are [his] same age whose wives didn't divorce them are now retiring"; and that he "want[s] to be a stay-at-home parent for the best benefit of [his] children."

¶26 Brent also offered expert testimony from Damon Marsh, a physician's assistant. Marsh's testimony was mixed. On the one hand, he opined that, based on various conditions, Brent's retirement was "medically necessary." On the other hand, he testified that Brent might be able to return to work "six months [to] a year" after vocational rehabilitation, a psychological assessment, and an orthopedic evaluation. And when asked by the court whether his testimony that Brent couldn't go back to work meant "that [Brent is] not capable of working period," Marsh responded, "I'm not saying that, no."

¶27 The court considered each of Brent's arguments about his employment capacity. The court first noted "there is no constitutional right to retire." The court next considered Marsh's testimony and noted that "Marsh stated [Brent] is capable of working." The court also noted that Brent was "58 years old" and "retired from teaching after 32 years." The court then rejected his argument that being "depressed from the divorce and forced retirement" rendered him unable to work. The court also gave little or no weight to his argument that his "wishes to enjoy retirement and stay at home with the children" justified a reduction in child support or alimony. Thus, the court found that he was "physically and mentally able to work and provide for the family."

¶28 The court also considered Brent's earning potential. The court found that while he "did not elect to stop working as a teacher, he is capable of employment in other fields." The court noted that he "has a college degree and is physically and mentally able to work" and concluded that the "stress, depression, and anxiety he feels do not prevent [him] from working."

¶29 The court concluded that "[t]he change in circumstances was created by [Brent]" and that he "should not benefit from a voluntary decision to stop working." The court therefore imputed his "income at $4,700 a month which is consistent with his historical earnings."

¶30 On appeal, Brent presents the same evidence showing a lack of employment capacity as he did in the trial court. He argues that "there is simply no evidence to support the claim that [he] is purposefully unemployed simply to reduce his child support or alimony." He also argues that the court's imputation analysis is based on mere conjecture that he may be capable of employment after rehabilitation.

¶31 Again, Brent has failed to marshal the evidence in support of the court's findings that he was capable of employment and that he was voluntarily unemployed, and he has not demonstrated that these findings are against the clear weight of the evidence. *See Hagan v. Hagan*, 810 P.2d 478, 483 (Utah Ct. App. 1991). "Formal briefing requirements aside, an argument that does not fully acknowledge the evidence supporting a finding of fact has little chance, as a matter of logic, of demonstrating that the finding lacked adequate factual support." *Bailey v. Retirement Board*, 2012 UT App 365, ¶ 8, 294 P.3d 577. Thus, "a party challenging a factual finding . . . will almost certainly fail to carry its burden of persuasion on appeal if it fails to marshal." *State v. Nielsen*, 2014 UT 10, ¶ 42, 326 P.3d 645.

¶32 This principle applies here. The evidence before the court, canvassed above, is sufficient to support the court's findings. And because employment capacity "is within the sound discretion of the trial court," we defer to the trial court's finding that Brent is capable of employment. *See Leppert v. Leppert*, 2009 UT App 10, ¶ 12, 200 P.3d 223 ("[T]he court is in an advantaged position to weigh the evidence, determine the persuasive value of the evidence, and make determinations based on the evidence."). Based on the court's detailed findings analyzing Brent's employment capacity and earning potential, we further conclude that the court did not abuse its discretion in finding that he was voluntarily unemployed or in imputing income to him. *See Rayner v. Rayner*, 2013 UT App 269, ¶ 10, 316 P.3d 455.

## III. Alimony

¶33 Brent next contends that "[t]he trial court erred in failing to retroactively award a reduction in alimony due to [Elena's] receiving retirement benefits." He argues that the trial court erred by "failing to follow statutory requirements that alimony modification should be retroactive to the date of the service of the petition to modify." In addition, he argues that even if the

court had discretion to refuse to apply the alimony modification retroactively, "the court overstepped its discretion" in refusing to do so here. Specifically, he alleges that "[t]he trial court gave no explanation as to the reasoning for allowing a 12-month windfall to [Elena]" during which she received $800 per month in retirement payments in addition to him owing her $1,200 per month in alimony.

¶34    The Utah Child Support Act provides that after an installment of child or spousal support falls due, it is "not subject to retroactive modification." Utah Code Ann. § 78B-12-112(3)(c) (LexisNexis 2012); *see also Wall v. Wall*, 2007 UT App 61, ¶ 20, 157 P.3d 341 (stating that, as a general rule, child support orders are not subject to retroactive modification). However, the following subsection contains an exception allowing the court to retroactively modify a child or spousal support obligation:

> A child or spousal support payment under a support order may be modified with respect to any period during which a modification is pending, but only from the date of service of the pleading on the obligee, if the obligor is the petitioner, or on the obligor, if the obligee is the petitioner. If the tribunal orders that the support should be modified, the effective date of the modification shall be the month following service on the parent whose support is affected. Once the tribunal determines that a modification is appropriate, the tribunal shall order a judgment to be entered for any difference in the original order and the modified amount for the period from the service of the pleading until the final order of modification is entered.

Utah Code Ann. § 78B-12-112(4).

¶35   Brent relies on the second sentence of this section, which read in isolation does seem to mandate retroactive modification of support:

> If the tribunal orders that the support should be modified, the effective date of the modification shall be the month following service on the parent whose support is affected.

*Id.* However, we do not read statutory text in isolation, but in context. *See State v. Robertson*, 2017 UT 27, ¶ 32 ("A familiar canon of statutory construction is that the context of a statute may eliminate potential interpretations of a statutory phrase."); *see also Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 36 (2012) (stating that "the first rule of . . . statutory interpretation is: Read on."). And the preceding sentence grants courts "the discretion to determine both if and when a modified . . . support award should be made retroactive." *Wall*, 2007 UT App 61, ¶ 21 (citation and internal quotation marks omitted). It also grants the court discretion to modify alimony for *any period* during which the petition for modification is pending:

> A child or spousal support obligation under a support order may be modified with respect to any period during which a modification is pending . . . .

Utah Code Ann. § 78B-12-112(4). Accordingly, as we have previously held, the statute provides "that support *may* be modified retroactively with respect to any post-service period, *not that it must be.*" *Wall*, 2007 UT App 61, ¶ 21 (emphases added) (citation and internal quotation marks omitted). Thus, "[c]ourts have discretion"—but not a duty—"to modify child support and alimony awards retroactively." *See Roberts v. Roberts*, 2014 UT App 211, ¶ 25, 335 P.3d 378. In sum, Brent's contention that Utah law requires retroactive modification of his alimony obligation,

though enjoying some textual support, fails on closer inspection of the controlling statute and opinions of this court construing it.

¶36   We next consider Brent's contention that, even if the trial court had discretion to deny retroactive modification, it exceeded its discretion in doing so. In *McPherson v. McPherson*, we stated that trial courts "have considerable discretion in determining alimony, and harsh awards or a disparity in obligations can be justified by a finding of one or more discretionary factors." 2011 UT App 382, ¶ 20, 265 P.3d 839 (citation and internal quotation marks omitted). For example, "an appropriate finding of voluntary underemployment and a resulting decision to impute income at a higher level may serve to motivate a spouse to seek employment more in line with his true earning capacity[.]" *See id.* ¶ 21.

¶37   Here, the trial court agreed with Brent's argument that "alimony should be reduced by $800" because Elena receives a payment in that amount each month as a portion of his pension. The court also agreed that "[i]t would be a windfall for [Elena] to receive both retirement and alimony," where the retirement was not part of the divorce. The court therefore reduced alimony from $1,200 to $400 per month. The court noted that Elena would still receive a total of $1,200 per month from Brent including the $800 retirement payment and the $400 alimony payment. However, while the court granted Brent's motion to reduce alimony for future payments, it ruled that the "modification of alimony is not retroactive." The court thus declined to alter the amount of the $19,043.61 judgment against him for unpaid alimony and child support. The court found that he "has the financial means to pay child support and alimony," noting that he owned a $200,000 home that was paid off and had a 401(k) account with over $50,000.

¶38   Given the court's "considerable discretion in determining alimony," its finding that Brent was voluntarily unemployed and its decision to impute higher income to him constituted

"discretionary factors" justifying its denial of retroactive modification. *See id.* ¶ 20 (citation and internal quotation marks omitted). We therefore conclude that the trial court did not abuse its discretion in declining retroactive modification of the alimony award.

## IV. Child Support

¶39　Brent contends that "[t]he trial court erred in calculating child support." He argues that "[t]he trial court made several findings that should have impacted the child support calculation," yet "without any explanation ordered that the child support remain at $548 per month." He alleges that "[t]he trial court clearly did not utilize the child support guidelines and failed to make any findings to support a deviation from the guidelines."

¶40　"A parent . . . may at any time petition the court to adjust the amount of a child support order if there has been a substantial change in circumstances." Utah Code Ann. § 78B-12-210(9)(a) (LexisNexis 2012). "A substantial change in circumstances sufficient to warrant modification occurs if one of the parent's incomes changes '30% or more' or there are 'material changes in the employment potential and ability of a parent to earn' that cause 'a difference of 15% or more between the payor's [original] support amount and the payor's support amount that would be required under the guidelines' using the new income." *Gore v. Grant*, 2015 UT App 113, ¶ 14, 349 P.3d 779 (alteration in original) (quoting Utah Code Ann. § 78B-12-210(9)(b)–(c)). "When such a substantial change of circumstances occurs, it is presumed that child support will be modified to the amount set forth in the guidelines." *Id.* (citing Utah Code Ann. § 78B-12-210(2)). "That presumption is rebutted, however, if the . . . court determines that 'complying with a provision of the guidelines or ordering an award amount resulting from use of the guidelines would be unjust, inappropriate, or not in the best interest of a child in a particular case.'" *Id.* (quoting Utah Code

Ann. § 78B-12-210(2)(a), (3)). "Should the court determine that the guidelines amount has been rebutted, the court shall make a finding to that effect," *id.* (citing Utah Code Ann. § 78B-12-210(3)), and "then must devise a support order" based on statutory factors, *id.* (citing Utah Code Ann. § 78B-12-202(3)).

¶41   Here, the trial court ruled that child support would remain at $548 per month. As explained above, although the court found that Brent's income decreased from $4,749.15 to $3,037.33 per month, the court imputed his monthly income at $4,700 per month. The court also found that Elena's income increased from $1,365 per month at the time of the divorce to $1,640 per month—not including her share of Brent's pension— at the time of the petition to modify. The court determined that "child support in the sum of $548 is appropriate based on the income of each parent."

¶42   Brent argues that, because the trial court found that the parties' incomes changed, the court should have used the statutory child support guidelines to recalculate the amount of child support. But he has not shown a substantial change in circumstances in light of his imputed income as required by the statutory guidelines outlined above. *See id.* Given that Brent failed to argue any additional grounds for modification of child support, the court did not abuse its discretion in denying the petition to modify child support. *See Andrus v. Andrus*, 2007 UT App 291, ¶ 9, 169 P.3d 754.

¶43   We conclude by briefly addressing Brent's argument at trial that his payment of the children's school expenses should absolve him of the obligation to pay child support. We disagree. It is well-established that "[b]oth parents have an obligation to support their children. A child's right to that support is paramount." *See Woodward v. Woodward*, 709 P.2d 393, 394 (Utah 1985). This principle applies in the context of school expenses. "If child support is inadequate to cover expenses parents wish to incur on behalf of their children, such as private school,

extracurricular activities, or . . . advanced placement tests, there is nothing to prevent parents from agreeing to share such additional expenses in the interest of their children." *Davis v. Davis*, 2011 UT App 311, ¶ 15, 263 P.3d 520. "However, these things are not necessities and must generally be budgeted as part of child support if the parties cannot agree otherwise." *Id.*

¶44 Here, Brent and Elena were unable to agree on how to pay for school expenses, and Brent chose to pay for school expenses rather than pay child support. However, because "each child support payment became a judgment on the date it was due," he "cannot offset his obligation for the child support arrearages that were due long before he contributed [money] to his [children's] education." *See Vicchrilli v. Tracy*, 2011 UT App 354, ¶ 10, 264 P.3d 760. Accordingly, notwithstanding his payment of school expenses, Brent must meet his child support obligations, both past and present.

CONCLUSION

¶45 For the foregoing reasons, we conclude that the trial court did not abuse its discretion in finding that Brent's change in income did not justify modification of alimony; that he was capable of employment; that he was voluntarily unemployed; and that his employment capacity and earning potential supported imputation of income. We further conclude that the trial court did not abuse its discretion in denying retroactive modification of alimony and in denying modification of child support. We therefore affirm these rulings. However, because we conclude that the trial court erroneously considered a legally irrelevant factor in making its cohabitation determination, we vacate that ruling and remand to the trial court to determine whether Elena cohabited under the correct legal standard.

―――――――